**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

July 21, 2026

Honorable Sanket J. Bulsara
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *E.T.G. v. Genalo et. al.*, No. 26-cv-4274 (Bulsara, J.)

Dear Judge Bulsara:

This Office represents Respondents Kenneth Genalo, New York Field Office Director, Immigration and Customs Enforcement ("ICE"); David J. Venturella, Senior Official Performing the Duties of the Director, ICE; Markwayne Mullin, Secretary of the Department of Homeland Security; and Todd Blanch, Acting Attorney General of the United States (collectively, the "Federal Respondents") in the above-captioned action, in which Petitioner E.T.G.[1] ("Petitioner"), a foreign national from Mexico present in the United States without being admitted or paroled, filed a petition for a writ of habeas corpus on July 16, 2026, challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). *See* Dkt. # 1 ("Petition"). Petitioner principally seeks an order from this Court directing ICE to immediately release him from detention alleging that his detention violates the Immigration and Nationality Act ("INA"), because he is subject to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b) or 1226(c), his due process rights, the Fourth Amendment, INA implementing regulations, and the Administrative Procedure Act and *Accardi* Doctrine, 5 U.S.C. §§ 702, 706. *See id.* 28-35.

The Federal Respondents respectfully submit this response in accordance with Your Honor's Order dated July 21, 2026, requiring Respondents to "provide a response to Petitioner's letter [7] and any response to the petition, including the legal basis for detention, no later than July 21, 2026 at 5:00 P.M." *See* Docket. For the reasons set forth below, Respondents respectfully submit that the Petition should be denied.

**Background Information Regarding Petitioner**

Petitioner is a foreign national from Mexico, who entered the United States at an unknown date and location. *See* Declaration of Deportation Officer ("DO") Dmitry Rousseau ("Rousseau

[1] Petitioner has filed a motion to proceed under the pseudonym in this action. *See* Docket Entry ("DE") No. 2. Although Respondents reserve the right to oppose that motion, for purposes of this response Respondents shall refer to Plaintiff by his initials.

Decl.") [DE 6-1], ¶¶ 3-4. On June 20, 2010, Petitioner was arrested by the Nassau County Police Department ("NCPD") for Menacing in the Second Degree, in violation of N.Y. Pen. Law § 120.14(01) and Resisting Arrest, in violation of N.Y. Pen. Law § 205.30 and subsequently convicted upon a plea of guilty to Disorderly Conduct in violation of N.Y. Pen. Law § 240.20 and sentenced to a Conditional Discharge with a fine of $100. *Id.* ¶ 5. On November 12, 2023, NCPD arrested Petitioner for Driving While Intoxicated ("DWI"), in violation of Vehicle and Traffic Law (V.T.L.) § 1192(03); in violation of V.T.L. § 1192(2-AA) and in violation of V.T.L. § 1192(02). *Id.* ¶ 6. On March 21, 2024, Petitioner was convicted upon plea of guilty to DWI in violation of V.T.L. § 1192(2-AA), and was sentenced to three years' probation, $1000 fine and Petitioner's license was revoked. *See id.* On August 26, 2024, NCPD arrested Petitioner for DWI – Prior Conviction within 10 Years, in violation of Vehicle and Traffic Law (V.T.L.) § 1192(02) and Aggravated Unlicensed Operation of a Motor Vehicle in violation of V.T.L. § 511 (03). *See id.* ¶ 7. On November 8, 2024, Petitioner was convicted upon plea of guilty to DWI – Prior Conviction within 10 Years, in violation of Vehicle and Traffic Law (V.T.L.) § 1192(02). *Id.* He was sentenced to 40 days' imprisonment, five years' probation, $1000 fine, and Petitioner's license was revoked. *Id.*

On or about October 21, 2024, ICE first became aware of petitioner, and his status as an alien unlawfully present in the United States who was amenable to removal. *See id.* ¶ 8. On October 21, 2024, ICE issued an I-200 Warrant for Arrest (the "Oct. 21, 2024 I-200") and Notice to Appear (the "Oct. 21, 2024 NTA"). *Id.*, ¶ 9; Exhs. B & C thereto.

On March 19, 2026, NCPD arrested Petitioner for Grand Larceny in the Fourth Degree in violation of N. Y. Pen. Law § 155.30. *See id.* ¶ 10; Exh. A thereto. On April 28, 2026, Petitioner was arrested by ICE officers pursuant to an I-200 Warrant for Arrest that had been issued on October 21, 2024.[2] At the time of his arrest, Petitioner was advised that he was being arrested pursuant to an I-200 warrant. *See* Declaration of Deportation Officer SpiroVandoros ("Vandoros Decl.") ¶ 9. The arresting officers were wearing clothing with highly visible markings identifying them as being "POLICE", "ERO", "ICE", and they identified themselves as being with the same. *See id.* ¶ 8.

Petitioner was transported for processing to 100 Carman Avenue, East Meadow, New York,[3] where he was presented with a copy of the I-200 and issued an I-862, Notice to Appear ("NTA"), charging Petitioner as being inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. *See* Vandoros Decl. ¶ 9-10; Rousseau Decl. ¶ 12. That same day, April 28, 2026, Petitioner was transferred to the Nassau County Correctional Center ("NCCC"). *Id.* ¶ 13. On April 30, 2026, Petitioner was transferred from the NCCC to the Orange County Jail in Goshen, New York. *Id.* ¶ 14. On June 24, 2026, Petitioner was transferred to the custody of the Nassau County Sheriff's Department ("NCSD")

---

[2] The October 21, 2024 I-200 and NTA were not served on Petitioner prior to April 28, 2026, they were not rescinded or otherwise voided, and they do not expire at any specific time under their own terms. Thus, both documents remained valid as of April 28, 206.

[3] Respondents note that the Rousseau Decl. erroneously stated that petitioner was processed at the Central Islip holding room, and apologizes for any confusion caused by this error. *See* DE 6 at 2; DE 6-1 ¶ 12.

pursuant to a Writ of Habeas Corpus Ad Prosequendum (the "Writ Ad Prosequendum") for attendance at his criminal proceedings. *Id.* ¶ 15; Exh. D. Pursuant to the Writ Ad Prosequendum, Petitioner was "released to the safekeeping, custody and care of the [NCSD]/Nassau County Correctional Facility" until such time as he was returned to "agents of the U.S. Department of Homeland Security, [ICE]." Exh. D at 2-3. As of this filing, Petitioner remains in the custody of the NCSD. Decl. ¶ 17.

Petitioner is expected to be returned to ICE custody sometime today, July 21, 2026. Thus, from the time of his arrest by ICE, until today, Petitioner has been in ICE custody for 58 days, including today.[4]

**Statutory Background**

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208 § 302, div. C, 110 Stat. 3009-546 (1996). Congress through IIRIRA, also streamlined the detention authorities covering aliens with certain criminal records, amending 8 U.S.C. § 1226(c) to replace the former 8 U.S.C. § 1252(a) and § 1226(e). *See* Pub. L. No. 104-208 § 303. Under § 1226(c), the Executive "shall take into custody any alien who" "committed" certain offenses enumerated in 8 U.S.C. §§ 1182 and 1227 or engaged in terrorism-related activities. *See* 8 U.S.C. § 1226(c)(1)(A)-(D). For them, there is no humanitarian parole option under § 1252(d)(5). Rather, Congress permitted release only if the Department of Homeland Security ("DHS") determines it "is necessary" to protect certain witnesses to criminal activity and if the alien "will not pose a danger" to public safety and is not a flight risk. 8 U.S.C. § 1226(c)(4); *Jennings v. Rodriguez,* 583 U.S. 281, 289 (2018).

The Laken Riley Act ("LRA"), Pub. L. 119-1, 139 Stat. 3 (2025), added to § 1226(c)(1), categories of covered aliens for whom "custody" is mandatory. Under 8 U.S.C. § 1226(c)(1)(E), custody is mandated over an alien who is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or 1182(a)(7) and "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Like subsection (c)(1)(A)-(D) aliens, subsection (c)(1)(E) aliens are ineligible for parole under § 1252(d)(5) and may only be released for the reasons in § 1226(c)(4).

## RESPONSE TO PETITIONER'S LETTER

**Petitioner Was Not In Respondents' Custody At The Time The Petition Was Filed**

As the Supreme Court held in *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004), the "proper respondent to [a] habeas petition," is the *immediate custodian* at the time of filing. (emphasis added). Here, at the time the Petition was filed, Petitioner was in custody of the Warden of the

---

[4] Petitioner was in ICE custody from April 28, 2026 until June 24, 2026, *i.e.* 57 days, plus his anticipated return to ICE custody today.

Nassau County Correctional Center[5] while awaiting sentencing on a state criminal charge. *See* DE 6 (Respondent's Response to the Court's July 16, 2026 Order). Thus, Petitioner's immediate custodian was NCCC Warden Larocco. *See id.*

The cases cited by Petitioner in opposing Respondents' argument that they did not have custody at the time of the filing of the Petition are not availing. In *Vidal-Martinez v. Prim*, No. 20-cv-5099, 2020 WL 6441341, at *5 (N.D. Ill. Nov. 3, 2020), the case most directly on point in that it also involved ICE detention, the petition had been filed *before* petitioner was transferred by ICE to another facility pursuant to a writ ad prosequendum. Thus, petitioner's immediate custodian at the time of filing was the proper custodian. *See id.*

The three other cases cited by Petitioner, *Pope v. Purdue*, 889 F.3d 410, 412-13 (7th Cir. 2018), *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978), and *Dutton v. United States Att'y Gen.*, 713 F. Supp. 2d 194, 200-01 (W.D.N.Y.) are all inapposite as they each addressed the effect that a writ ad prosequendum had on determining when a prisoner's sentence began running, and other issues related to calculating a prisoner's time-served, when he is transferred between state and federal custody.

Respondents assert, as they did in their initial response, that since Petitioner had been transferred to the NCCC prior to, and at the time of filing of the Petition, they did not have custody of Petitioner for purposes of this habeas action. *See* DE 6. Until Petitioner is returned to ICE custody, which is anticipated to take place today, Respondents cannot exercise control over Petitioner.

Moreover, as set forth below, once Petitioner is returned to ICE custody, it is ICE's position that he will be detained under § 1226(a), and thus he will be entitled to a custody determination by ICE. Said determination could result in Petitioner being released from custody. If not, Petitioner would be entitled to a bond hearing before an immigration judge. Thus, this Petition is not only improper, as Petitioner is not in Respondents' custody, but it is premature as Plaintiff has not yet exhausted his administrative remedies.

## RESPONSE TO PETITION

Although Respondents respectfully assert that they should not be required to respond to an improvidently filed habeas petition, given the Court's July 19, 2026 Order, they respectfully submit the following.

### Petitioner Was Detained Pursuant to 8 U.S.C.§ 1226(c)(1)(E)

Persons detained under 8 U.S.C. § 1226 (c)(1)(E) must remain detained for the duration of their removal proceedings without access to a bond hearing, and they may only be released if one of the limited, enumerated circumstances in 8 U.S.C. § 1226(c)(4) are satisfied, which are not present here.

---

[5] Petitioner was at the NCCC pursuant to a writ of habeas corpus ad prosequendum ("writ ad prosequendum"). *See* Rousseau Decl. ¶ 15; *see also* Petitioner's Letter [DE 7].

The detention authority in 8 U.S.C. § 1226(c)(1)(E) covers "any alien who-- . . . (i) is inadmissible under [8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7)]; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any . . . larceny." "[T]he term[] . . . 'larceny' . . . ha[s] the meaning[] given such term[] in the jurisdiction in which the act[] occurred." *See* 8 U.S.C. § 1226(c)(2). The Executive "shall take into custody" such aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *See* 8 U.S.C. § 1226(c)(1)(E). "The Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien." *See* 8 U.S.C. § 1226(c)(3).

A detainee under § 1226(c)(1) "may" be released "only if . . . release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *See* 8 U.S.C. § 1226(c)(4). None of these possible release scenarios are present here.

Here, it is undisputed that Petitioner is an alien inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner was arrested on a formal charge of fourth degree grand larceny, a class E-felony. *See* Rousseau Decl. ¶ 10; Exh. A at 11-12. Petitioner's charge for grand larceny is a textual match for a covered crime and the charges were pending as of ICE's arrest of Petitioner. *See Oldacre v. Arteta*, No. 26-cv-2672, 2026 WL 1398650, *4 (S.D.N.Y. May 19, 2026) (*Oldacre I*) ("Both grand larceny in the fourth degree and petit larceny fall squarely within the definition of 'larceny' under New York law. [Petitioner] was therefore plainly charged with larceny as that term is defined under state law."); *see also Ahmed v. Maldonado*, No. 26-cv-3656, 2026 WL 2042849, *4 (E.D.N.Y. July 15, 2026) (Merchant, J.) (where petitioner was charged with petit larceny, "mandatory detention under § 1226(c)(1)(E) applies to Petitioner"). Thus, Petitioner was subject to the detention authority in 8 U.S.C. § 1226(c)(1)(E). DHS, therefore, "shall issue a detainer" for him – which it did – and he "shall" be "take[n] into custody" – which he was.

Petitioner was not entitled to a bond hearing under § 1226(c). As § 1226(a) confirms, its bond procedures apply "[e]xcept as provided in subsection (c)." *See* 8 U.S.C. § 1226(a). Rather, Petitioner may be released only for the reasons enumerated in 8 U.S.C. § 1226(c)(4). In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), *rehearing en banc denied*, 156 F.4th 171 (2d Cir. 2025), *cert petition filed*, No. 25-886 (Jan. 22, 2026), the Second Circuit, in reaching the question of how long aliens may be detained under § 1226(c) without further process, concluded that "noncitizens who have committed one of certain listed offenses . . . are subject to mandatory detention." *See* 103 F.4th at 140-41. "The 'Attorney General *shall* take into custody' any such noncitizen." *Id.* at 141. Their release is "allow[ed] . . . in extremely limited circumstances: only" under the provision now codified at 8 U.S.C. § 1226(c)(4). *Id.* Such detention "*must* continue 'pending a decision on whether the alien is to be removed from the United States." *Id.* at 142 (citing *Jennings*, 583 U.S. at 303).

**Upon Return to ICE Custody, the Detention Authority Will Be 8 U.S.C. § 1226(a)**

On July 16, 2026, the date the Petition was filed, Petitioner was convicted upon a plea of guilty to a lesser offense, Disorderly Conduct in violation of N.Y. Pen. Law § 240.20, and sentenced to a Conditional Discharge and a final Order of Protection. *See* Rousseau Decl. ¶ 16; Exh. A at 12. Because Petitioner was convicted of a non-LRA offense, his continued detention, once he is returned to ICE custody, is no longer pursuant to § 1226(c) but instead will be pursuant to § 1226(a). *See Oldacre v. Arteta*, No. 26-cv-2672, 2026 WL 1718184, *3 (S.D.N.Y. June 12, 2026) (*Oldacre II*) (where the charges against petitioner had been dismissed four days before the decision in *Oldacre I* had issued, the court held "[b]ecause mandatory detention under § 1226(c)(1)(E) no longer applies to Oldacre, [he] may be detained only under § 1226(a)"); *see also Hanson v. Joyce*, No. 26-cv-3326, 2026 WL 2058445, *2-3 (S.D.N.Y. July 16, 2026) (holding that when criminal charges are dropped, detention under § 1226(c) becomes detention under § 1226(a)).[6] As the courts in both *Oldacre II* and *Hanson* held, petitioners are entitled to a bond hearing once their detention is pursuant to § 1226(a).

For the reasons set forth above, the Federal Respondents respectfully submits that habeas jurisdiction as to the Federal Respondents is not present, and therefore requests that the Court dismiss the Petition.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: */s/ Thomas R. Price*
Thomas R. Price
Assistant U.S. Attorney
(631) 715-7893
thomas.price@usdoj.gov

cc: (by ECF)
All counsel of record

[6] Some courts have held that § 1226(c)(1)(E) does not apply where covered charges were dropped by the time the petitioner was detained. *See, e.g., Sidqui v. Almodovar*, 2026 WL 251929, at *12 (S.D.N.Y. Jan. 30, 2026). However, *Sidqui* is not applicable here as the LRA charge against Petitioner was pending at the time of detention and remained pending until Petitioner's guilty plea on July 16, 2026.