**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| E.T.G.,<br><br>*Petitioner,*<br>v.<br><br>KENNETH GENALO, *in his official capacity as* Field Office Director of New York, Immigration and Customs Enforcement, *et al.*,<br><br>*Respondents*. | Case No. 2:26-cv-4274 (SJB) |

**PETITIONER'S REPLY IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

ARGUMENT ........ 1

I. The Petition Should Not Be Dismissed or Transferred ........ 1

A. Federal Respondents have had immediate custody of E.T.G. since the filing of this habeas action ........ 1

B. Venue lies in this District ........ 5

II. This Court Should Grant the Petition and Order Immediate Release ........ 6

A. E.T.G.'s arrest pursuant to a 2024 warrant and before the issuance of a valid NTA is unlawful ........ 6

B. ICE has not conducted an individualized custody determination ........ 8

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbosa da Cunha v. Freden*,
175 F.4th 61 (2d Cir. 2026) .......... 8

*Flores-Linares v. Bondi*,
No. 26-cv-298 (SJB), 2026 WL 179208 (E.D.N.Y. Jan. 22, 2026) .......... 1, 5

*Glover v. Warden, Fed. Bureau of Prisons*,
No. 25-cv-2470 (LJL), 2025 WL 1397140 (S.D.N.Y. May 14, 2025) .......... 3

*Gopie v. Lyons*,
No. 25-cv-5229 (SJB), 2025 WL 3167130, (E.D.N.Y. Nov. 13, 2025) .......... 6, 7, 9, 10

*Inestroza Carbajal v. Frazier*,
No. 26-cv-2778 (SJB), 2026 WL 1309265 (E.D.N.Y. May 12, 2026) .......... 8, 9

*Joseph v. Betti*,
No. 23-cv-61, 2024 WL 3362270 (M.D. Pa. July 9, 2024) .......... 1, 5

*Kelly v. Almodovar*,
No. 25-cv-6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025) .......... 9

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) .......... 1

*Parada Cruz v. Mullin*,
No. 26-cv-1110 (SJB), 2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026) .......... 6, 7

*Pereira v. Sessions*,
585 U.S. 198 (2018) .......... 7

*Roche v. Sizer*,
675 F.2d 507 (2d Cir. 1982) .......... 3

*United States v. Fermin*,
252 F.3d 102, 108 n.10 (2d Cir. 2001) .......... 2

*United States v. Thadison*,
No. 5:18-cr-21, 2024 WL 3707557 (S.D. Miss. Aug. 7, 2024) .......... 4

*Valdes Acevedo v. Nassau Cnty. Corr. Ctr.*,
No. 2:26-cv-250 (NJC), 2026 WL 184645 (E.D.N.Y. Jan. 24, 2026) .......... 5

*Vidal-Martinez v. Prim*,
No. 20 C 5099, 2020 WL 6441341 (N.D. Ill. Nov. 3, 2020) .................... 4

*Yeleshev v. LaRocco*,
No. 26-cv-2294 (SJB), 2026 WL 1353806 (E.D.N.Y. May 14, 2026) .................... 6, 7

**Statutes**

28 U.S.C. § 2241 .................... 2

**Regulations**

8 C.F.R. § 1236.1 .................... 6

**Other Authorities**

Stipulation & Order of Dismissal and Settlement,
*Velesaca v. Decker,* ECF No. 177, No. 20-cv-01803 (AKH) (S.D.N.Y.) .................... 9, 10

Petitioner E.T.G. has been detained in Immigration and Customs Enforcement ("ICE") custody for nearly three months. Respondents unlawfully arrested him on April 28, 2026 with a 2024 warrant before a valid Notice to Appear ("NTA") was issued, and have failed to conduct a proper individualized custody determination under 8 U.S.C. § 1226(a). For these reasons, Petitioner respectfully requests the Court grant the Petition and order his immediate release.

## ARGUMENT

### I. The Petition Should Not Be Dismissed or Transferred

"There are 'two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian.'" *Flores-Linares v. Bondi*, No. 26-cv-298 (SJB), 2026 WL 179208, at *1 (E.D.N.Y. Jan. 22, 2026) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025)). Both are met here.

#### *A. Federal Respondents have had immediate custody of E.T.G. since the filing of this habeas action*

E.T.G. was in the custody of Respondent Anthony J. LaRocco and the Federal Respondents when he was held at the Nassau County Correctional Center ("NCCC") at the time the Petition was filed. *See Joseph v. Betti*, No. 23-cv-61, 2024 WL 3362270, at *3 (M.D. Pa. July 9, 2024) (holding that a petitioner was in ICE custody when he filed a habeas petition challenging his ICE custody when he was in a state correctional facility pursuant to a writ of habeas corpus ad prosequendum).

ICE and the Federal Respondents have had continued custody over E.T.G. since his detention on April 28, 2026, including through his detention at NCCC under the writ of habeas corpus ad prosequendum ("Nassau Writ"), ECF No. 1-5. On March 19, 2026, E.T.G. was arrested by Nassau County Police for grand larceny in the fourth degree under New York Penal Law § 155.30(4). *See* Petition for Writ of Habeas Corpus ("Petition") ¶ 29, ECF No. 1. On March 20,

2026, E.T.G. was released from pre-trial criminal custody with electronic monitoring. *See* Exhibit A, NYS Criminal Inquiry System Report. E.T.G. was therefore not in criminal custody under New York law when he was detained by ICE on April 28, 2026 and brought to Orange County Jail ("OCJ").[1] On June 4, 2026, the Nassau County Supreme Court issued the Nassau Writ recognizing that E.T.G. was in ICE custody and ordering ICE to allow the Nassau County Sheriff's Office and the NCCC to hold E.T.G. so that he could be produced for his criminal court dates; in sum, to borrow E.T.G. *See* Nassau Writ at 3. The Nassau Writ further directed the NCCC to return E.T.G. to ICE upon the conclusion of the criminal proceedings. *Id.* at 3–4. E.T.G. was transferred to NCCC on June 24, 2026. *See* Petition ¶ 36; Declaration of Dmitry Rousseau ("Rousseau Decl.") ¶ 15, ECF No. 6-1. On July 21, 2026, NCCC returned E.T.G. to ICE, and E.T.G. is currently detained at OCJ. *See* Letter dated July 22, 2026, ECF No. 9.

Federal Respondents assert that E.T.G. was not in their custody when the Petition was filed because E.T.G. was at NCCC. Letter dated July 17, 2026 ("Letter") at 2, ECF No. 6; Response Letter dated July 21, 2026 ("Response Letter") at 4, ECF No. 8. But that argument misunderstands the nature of the writ of habeas corpus ad prosequendum. As the Second Circuit has explained, a person "held at a federal detention facility is not 'in custody' for the purposes of [18 U.S.C.] § 3585(a) when he is produced through a writ of habeas corpus ad prosequendum" from state custody. *United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001). The same principles apply to "custody" under the habeas statute, 28 U.S.C. § 2241, and Respondents' attempts to distinguish cases previously cited by Petitioner, *see* Response Letter at 4, ignore the bedrock

[1] Respondents state that E.T.G. was transferred to OCJ on April 30, 2026, *see* Declaration of Dmitry Rousseau ¶ 14, ECF No. 6-1, but E.T.G. was transferred to OCJ the day of his arrest, April 28, 2026. *See* Exhibit B, I-830.

principle that E.T.G.'s physical transfer to NCCC pursuant to the Nassau Writ never interrupted ICE's *custody* over E.T.G.

"[W]hen an arrestee is released on bail or posts bond and is subsequently taken into the physical custody of a separate sovereign, the second sovereign acquires primary jurisdiction." *Glover v. Warden, Fed. Bureau of Prisons*, No. 25-cv-2470 (LJL), 2025 WL 1397140, at *3 (S.D.N.Y. May 14, 2025) (citing *Roche v. Sizer*, 675 F.2d 507, 510 (2d Cir. 1982)). Here, E.T.G. was released from state criminal custody on March 20, 2026, and entered into ICE custody on April 28, 2026, so "primary jurisdiction passed to" ICE and the Federal Respondents. *Id.* "The sovereign with primary jurisdiction may, if it chooses, 'loan' the arrestee to another sovereign to be prosecuted pursuant to a writ of habeas corpus ad prosequendum or similar process, but this does not result in a relinquishment of primary jurisdiction and the arrestee will subsequently return to the custody of the first sovereign." *Id.* at *2. Indeed, "the [state] court recognized this by seeking custody over Petitioner through a writ of habeas corpus ad prosequendum, which maintains primary jurisdiction with" ICE. *Id.* at *3.

Therefore, E.T.G. was detained under civil immigration detention authority and under the control of the Federal Respondents while physically at NCCC pursuant to the Nassau Writ. If E.T.G. had not been detained by ICE on April 28, 2026, he would have been at liberty during his criminal proceedings. The only reason E.T.G. was detained at NCCC and in the custody of Respondent LaRocco on July 16, 2026 is because the Federal Respondents were detaining him under federal immigration law. Put differently, but for E.T.G. being in ICE detention, E.T.G. would not have been detained at NCCC or anywhere else. This is underscored by the fact that the Nassau Writ expressly contemplates that upon the completion of the criminal proceedings, E.T.G.

was to be transferred back into ICE custody rather than released pursuant to a criminal court order. Nassau Writ at 3–4.

Respondents essentially assert that E.T.G. cannot challenge his detention by ICE while detained at NCCC under the Nassau Writ. But that would have left E.T.G. with no legal recourse whatsoever to challenge his detention at NCCC. The Nassau criminal court did not have power over E.T.G.'s detention; he was detained pursuant to the detention provisions of the Immigration and Nationality Act. *See United States v. Thadison*, No. 5:18-cr-21, 2024 WL 3707557, at *2 (S.D. Miss. Aug. 7, 2024) ("Writs of Habeas Corpus ad prosequendum signal that the court issuing the writ does not have primary jurisdiction."). In fact, Federal Respondents do not suggest that E.T.G. would have been able to seek bail and release before the state criminal court while at NCCC under the Nassau Writ. This would be especially nonsensical for E.T.G. because he was already released pending his criminal proceedings on March 20, 2026.

Federal Respondents' position would leave noncitizens transferred to state facilities for production for their criminal cases completely unable to contest their detention for however long they are detained under a writ of habeas corpus ad prosequendum. This would be untenable. The facilitation of writs of habeas corpus ad prosequendum—which is critical for ensuring that noncitizens can defend against criminal charges while detained by ICE—cannot immunize ICE from habeas challenges to the noncitizens' unlawful detention. *See Vidal-Martinez v. Prim*, No. 20 C 5099, 2020 WL 6441341, at *5 n.6 (N.D. Ill. Nov. 3, 2020) ("If the Court found otherwise and concluded that an ICE facility transfer destroyed jurisdiction, it would lead to the perverse result that ICE could avoid jurisdiction by transferring detainees to different facilities.").

In sum, because the Federal Respondents had custody over E.T.G. when the Petition was filed, and Respondent LaRocco was properly named as the warden of the facility where E.T.G. was located, this Court should not dismiss the Petition.

### *B. Venue lies in this District*

"There is no doubt that venue is proper only in a single district: the district of confinement." *Flores-Linares*, 2026 WL 179208, at *2 . Here, E.T.G. was detained at NCCC when the Petition was filed, which is in this District. Therefore, this District is the proper venue for this habeas action.[2] *See Joseph*, 2024 WL 3362270, at *2.

Federal Respondents contend that this District is not the "proper forum" because E.T.G. was transferred to and from NCCC by the Nassau County Sheriff's Office, not ICE, so E.T.G. was not in ICE custody in this District. Letter dated July 22, 2026 at 1, ECF No. 9. As explained, *supra*, ICE maintained custody over E.T.G. the entire time he was transferred to and from and detained at NCCC in this District. To the extent Federal Respondents' challenge to the "forum" constitutes a challenge to venue, their argument is meritless. What matters here is where E.T.G. was physically confined when the Petition was filed, and he was detained in this District. Indeed, Federal Respondents do not state that the Petition could have been filed in the Southern District of New York on July 16, 2026. Therefore, venue lies in this District.

---

[2] Moreover, this District is the proper venue under "traditional venue concerns." *Valdes Acevedo v. Nassau Cnty. Corr. Ctr.*, No. 2:26-cv-250 (NJC), 2026 WL 184645, at *12 (E.D.N.Y. Jan. 24, 2026). E.T.G. lived and worked in this District before he was detained; had a criminal case pending in this District; was arrested by ICE in this District; and was processed for detention in this District. *See* Declaration of E.T.G. ("E.T.G. Decl.") ¶¶ 2, 9, 15, ECF No. 1-1. Thus, "[t]he Eastern District of New York . . . has a strong interest in hearing the habeas petition." *Valdes Acevedo*, 2026 WL 184645, at *12. And "Respondents have pointed to no prejudice to litigating the matter here." *Id.*

## II. This Court Should Grant the Petition and Order Immediate Release

### *A. E.T.G.'s arrest pursuant to a 2024 warrant and before the issuance of a valid NTA is unlawful*

Under this Court's decisions in *Gopie v. Lyons*, No. 25-cv-5229 (SJB), 2025 WL 3167130, (E.D.N.Y. Nov. 13, 2025), *Parada Cruz v. Mullin*, No. 26-cv-1110 (SJB), 2026 WL 1027441 (E.D.N.Y. Apr. 16, 2026), and *Yeleshev v. LaRocco*, No. 26-cv-2294 (SJB), 2026 WL 1353806 (E.D.N.Y. May 14, 2026), which Respondents fail to address, E.T.G.'s arrest under a warrant that issued over a year ago and before a valid NTA was issued mandates E.T.G.'s immediate release.

"The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie*, 2025 WL 3167130, at *1. "8 C.F.R. § 1236.1 provides, in relevant part, '[a]t the time of issuance of the notice to appear, or at any time thereafter . . . the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." *Id.* (quoting 8 C.F.R. § 1236.1). Simply put, "[i]f ICE wants to use a warrant, it must have a valid NTA in place." *Parada Cruz*, 2026 WL 1027441, at *2.

Here, ICE states that it arrested E.T.G. on April 28, 2026, pursuant to a warrant issued in October 2024.[3] *See* Declaration of Spiro Vandoros ("Vandoros Decl.") ¶ 9, ECF No. 8-1; 2024 Warrant, ECF No. 6-3. On the face of the 2024 Warrant, removal proceedings had not been initiated when the warrant was issued because the box "the execution of a charging document to initiate removal proceedings against the subject" is not checked. *See* 2024 Warrant; *see Parada*

[3] Respondents do not assert any permissible basis to detain E.T.G. without a warrant under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). Importantly, Respondents do not represent that ICE had any probable cause that E.T.G. was likely to escape such that a warrantless arrest would have been lawful. *See* Petition ¶¶ 75–78. Moreover, Officer Vandoros's account of E.T.G.'s arrest is incorrect; E.T.G. was not arrested in a vehicle stop, Vandoros Decl. ¶ 8, but rather while he was working his landscaping job, E.T.G. Decl. ¶¶ 9–14.

*Cruz*, 2026 WL 1027441, at *2 n.17 (noting that this box was not checked on a warrant). Further, while Officer Vandoros asserts that E.T.G. was served with the 2024 Warrant on April 28, 2026, Vandoros Decl. ¶ 10, that claim is belied by the 2024 Warrant itself because the "Certificate of Service" section of the warrant is not executed, *see* 2024 Warrant. As E.T.G. has explained, he was not served with any documentation when he was arrested and detained.[4] E.T.G. Decl. ¶¶ 14–17.

Even assuming E.T.G.'s arrest pursuant to the 2024 Warrant over a year later is permissible, his arrest under that warrant is still unlawful because no valid NTA had been issued before the warrant was issued and before E.T.G. was arrested. Respondents assert that an NTA was issued against E.T.G. in 2024. *See* Rousseau Decl. ¶ 9, ECF No. 6-1; 2024 NTA, ECF No. 6-4. "But that NTA was invalid" under *Pereira v. Sessions*, 585 U.S. 198 (2018) because "it had no date or time to appear." *Parada Cruz*, 2026 WL 1027441, at *2 & n.15; *see* 2024 NTA. In fact, DHS did not use the 2024 NTA to initiate removal proceedings against E.T.G. Instead, DHS issued a new NTA on April 28, 2026, but that NTA was issued over a year *after* the 2024 Warrant was issued and *after* E.T.G. was arrested, as Respondents admit. Rousseau Decl. ¶¶ 11–12 (2026 NTA issued after E.T.G. was arrested and taken into custody for processing); *Yeleshev*, 2026 WL 1353806, at *2–3 (arrest "15 to 20 minutes" before NTA was issued was unlawful). "Yet, despite the fact that there were no open removal proceedings and there was no valid NTA, ICE arrested [E.T.G.] pursuant to an I-200 arrest warrant." *Parada Cruz*, 2026 WL 1027441, at *2. The unlawful arrest "is a dispositive and independent basis to grant the writ" and warrants E.T.G.'s immediate release. *Gopie*, 2025 WL 3167130, at *1.

---

[4] While E.T.G. maintains that he was not served with the 2026 NTA on April 28, 2026, *see* E.T.G. Decl. ¶ 17, the 2026 NTA includes a notation that incorrectly indicates that E.T.G. refused to sign the certificate of service. There is no comparable notation on the 2024 Warrant.

### *B. ICE has not conducted an individualized custody determination*

As in *Gopie*, Respondents' failure to conduct an individualized custody determination for E.T.G. also commands his immediate release. Respondents claim that they detained E.T.G. on April 28, 2026, under 8 U.S.C. § 1226(c), but they provide no supporting contemporaneous documentation. It is thus unclear whether E.T.G. was initially detained under § 1226(c) or pursuant to DHS's mandatory detention policy under § 1225(b)(2)(A).[5] In any event, E.T.G. maintains that his detention under § 1226(c)(1)(E) was unconstitutional from the start since he was subjected to mandatory detention on the basis of mere criminal charges rather than convictions. *See* Petition ¶¶ 59–73. Therefore, he should have been detained under § 1226(a) and entitled to an individualized custody determination on April 28, 2026.

Now that E.T.G.'s criminal charges have been resolved, Respondents agree that E.T.G. is subject to discretionary detention, Response Letter at 9, and state that DHS provided E.T.G. with a custody determination on July 22, 2026, *see* Letter dated July 22, 2026, ECF No. 11. However, that determination was insufficient under due process.

As a preliminary matter, this Court had held that a post-hoc custody determination after unlawful mandatory detention under § 1225(b) does not remedy the constitutional violation and thus immediate release is warranted. *Inestroza Carbajal v. Frazier*, No. 26-cv-2778 (SJB), 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) (rejecting the government's position that "what began and continued as an illegal detention, became legal because they have found a different source of legal authority"). The same logic applies here where, assuming DHS detained E.T.G. under § 1226(c)(1)(E) on April 28, 2026, E.T.G.'s mandatory detention under that statute was

[5] E.T.G. was detained about two hours after *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) was published.

unconstitutional. "Had Respondents first proceeded under [§] 1226(a), [E.T.G.] would have been entitled to an individualized custody determination, the ability to seek bond before an immigration judge, and further appellate process." *Id.* at *2.

But even accepting that conducting a custody determination after the criminal charges were resolved was not unduly delayed, the determination was still insufficient. If ICE wishes to detain a noncitizen under § 1226(a), "ICE must allow the noncitizen to demonstrate to the satisfaction of the officer that [ ] release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Gopie*, 2025 WL 3167130, at *2 (quoting *Kelly v. Almodovar*, No. 25-cv-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025)). While Respondents filed a Notice of Custody Determination ("Notice") signed on July 22, 2026, *see* ECF No. 11-1, "Respondents provide no information about what happened on [July 22] as it relates to the required custodial determination—what, if anything, the . . . officer and Petitioner discussed, or what analysis or conclusion was made about custody," *Gopie*, 2025 WL 3167130, at *2, and "Respondents do not explain why [E.T.G.] is a flight risk or danger to the community," *Inestroza Carbajal*, 2026 WL 1309265, at *4. "There is no evidence, in other words, to conclude that even the after-the-fact determination comported with due process." *Gopie*, 2025 WL 3167130, at *3.

Second, Respondents have failed to comply with the *Velesaca* settlement.[6] While Respondents attached the Spanish version of the *Velesaca* advisal, *see* ECF No. 11-1, they did not

[6] The *Velesaca* settlement applies to ICE NY ERO and provides that a "noncitizen should be released . . . if he or she establishes, on a case-by-case basis, to the officer's satisfaction that he or she does present a danger to the community or a flight risk, including whether if one or more special vulnerabilities warrant release as a matter of discretion in light of the individual circumstances." Stipulation & Order of Dismissal and Settlement ¶ 8, *Velesaca v. Decker,* ECF No. 177, No. 20-cv-01803 (AKH) (S.D.N.Y.) ("*Velesaca* Settlement"). The settlement further provides that "ERO-NY agrees to provide an Advisal Notice . . . to each covered noncitizen at the beginning of processing and *before commencing an initial custody determination*." *Id.* ¶ 25 (emphasis added). The *Velesaca* Settlement also contemplates that the initial custody

attach the *Velesaca* worksheet that ICE officers must fill out when conducting individualized custody determinations. Various provisions of the *Velesaca* settlement make clear that an interview with the noncitizen should occur during the custody determination to obtain certain information necessary to make that determination,[7] but there is no evidence in the record that such an interview took place. The Notice is signed by Officer Mincheal So from 201 Varrick Street, New York, NY, not from an officer at OCJ who could have spoken with E.T.G. *See* Notice. Thus, on the record submitted to this Court by Respondents, the decision to detain Petitioner in an initial custody determination was made by Officer So without E.T.G. being given any opportunity to meet his burden that he should be released.

Release is the only appropriate remedy, and contrary to Respondents' arguments, Response Letter at 4, E.T.G. does not need to exhaust his remedies by seeking a bond hearing. "[A] bond hearing before an immigration judge is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance." *Gopie*, 2025 WL 3167130, at *3. E.T.G. "is not required to exhaust a process that was deficient from the outset." *Id.*

---

determination will be conducted by an officer after the advisal is provided and *Velesaca* worksheet will be filled out "when conducting initial custody determinations." *Id.* ¶ 23.

[7] *See, e.g.*, *Velesaca* Settlement ¶ 8 (requiring ICE to consider "special vulnerabilities"); ¶ 15 (requiring ICE to "ask[] the covered noncitizen about how much they believe they would be able to post" bond when making ability to pay determinations); *id.* ¶ 19 (requiring ICE to consider whether the noncitizen has a disability). The *Velesaca* worksheet includes factors for consideration that may not be readily available in a noncitizen's immigration file and would likely need to be obtained from the noncitizen himself. *E.g.*, *id.* Exhibit A (listing considerations such as "employment history and ties to the community," "criminal history not known to the immigration officer but disclosed by the noncitizen," "identified disabilities or medical conditions," "family ties in the U.S.," "mental illness," and "primary caretaking responsibility").

## CONCLUSION

For the reasons set forth above, and in the Petition, Petitioner respectfully requests the Court order his immediate release.

Dated: July 24, 2026
Brooklyn, New York

Respectfully submitted,

*/s/ Anna K. Jessurun*

Anna K. Jessurun
Alexandra Lampert
Lucas S. Marquez
Brooklyn Defender Services
177 Livingston Street, Flr. 7
Brooklyn, NY 11201
718-254-0700
ajessurun@bds.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I certify that this brief complies with Local Rule 7.1(c) because it contains 3,457 words.

*/s/ Anna K. Jessurun*
Anna K. Jessurun

*Counsel for Petitioner*