UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
E.T.G.,

                          Petitioner,

                                                              **MEMORANDUM**
            v.                                                **AND ORDER**
                                                              26-CV-4274-SJB

KENNETH GENALO, et al.,

                          Respondents.
------------------------------------------------------------------X
**BULSARA, United States District Judge:**

Petitioner E.T.G., a citizen of Mexico who has lived in the United States for more

than two decades, was arrested on April 28, 2026, by U.S. Immigration and Customs

Enforcement ("ICE") officers.  (Pet. for Writ of Habeas Corpus filed July 16, 2026,

("Pet."), Dkt. No. 1 ¶¶ 11, 20).  E.T.G. was working for his brother's landscaping

company when he was approached by ICE.  (*Id.* ¶¶ 30, 32).  E.T.G. came to the United

States in 2000 as an unaccompanied minor when he was fifteen or sixteen years old.  (*Id.*

¶ 21).  In 2001, E.T.G.'s U.S.-citizen brother filed an I-130 petition on his behalf, which

was approved in 2009, providing E.T.G. with a path to lawful permanent residency

once his priority date becomes current.  (*Id.* ¶¶ 2, 24).  E.T.G. has a U.S.-citizen partner

and three U.S.-citizen daughters.  (*Id.* ¶ 27).  He has been detained for almost three

months.  (*Id.* ¶ 1).  At the time the petition was filed, he was detained at the Nassau

County Correctional Center ("NCCC").  (Pet. ¶ 36; Resp'ts' July 17, 2026 Letter, Dkt. No.

6 at 2).  Because E.T.G.'s arrest was illegal, Respondents are directed to effectuate his

release.

E.T.G. was arrested by ICE on April 28, 2026 pursuant to 8 U.S.C. § 1226(c)(1)(E), (Resp'ts' July 21, 2026 Letter, Dkt. No. 8 at 2, 4), which provides for mandatory detention of an individual who is both inadmissible under the Immigration and Nationality Act ("INA") and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. § 1226(c)(1)(E). His detention was based upon pending charges for fourth degree grand larceny under New York Penal Law § 155.30(4) brought in March 2026 in Nassau County. (Pet. ¶ 29; Resp'ts' July 21, 2026 Letter at 5).

After his arrest, E.T.G. was brought to NCCC for processing. (Resp'ts' July 21, 2026 Letter at 2; Decl. of Spiro Vandoros ("Vandoros Decl."), attached to Resp'ts' July 21, 2026 Letter, Dkt. No. 8-1 ¶ 9). On April 30, 2026, E.T.G. was transferred from NCCC to the Orange County Jail in Goshen, New York. (Decl. of Dmitry Rousseau ("Rousseau Decl."), attached to Resp'ts' July 17, 2026 Letter, Dkt. No. 6-1 ¶ 14). On June 24, 2026, E.T.G. was transferred to the Nassau County Sheriff's Department ("NCSD")/NCCC pursuant to a writ of habeas corpus ad prosequendum issued by the Nassau County Supreme Court for appearance at his criminal proceedings. (Id. ¶ 15; Pet. ¶ 36; Writ of Habeas Corpus ad Prosequendum dated June 4, 2026, attached to Rousseau Decl. as Ex. E, Dkt. No. 6-6). E.T.G. remained at NCCC until his criminal appearance on July 16, 2026. (Pet. ¶ 36). On July 16, 2026, E.T.G. pled guilty to a disorderly conduct violation, resolving his pending grand larceny charges with a non-criminal violation. (Id. ¶ 38).

He was sentenced to a conditional discharge and a final order of protection. (Rousseau Decl. ¶ 16). On July 21, 2026, five days after the petition was filed, E.T.G. was transferred back to the Orange County Jail in Goshen, New York, pursuant to the writ ad prosequendum. (*See* Resp'ts' July 22, 2026 Letter, Dkt. No. 9).

As an initial matter, Federal Respondents Kenneth Genalo, David J. Venturella, Markwayne Mullin, and Todd Blanche (collectively, "Respondents") seek dismissal, contending Petitioner was not in their custody in the Eastern District of New York at any time during the pendency of this action based on the writ of habeas corpus ad prosequendum. (*Id.*; Resp'ts' July 17, 2026 Letter at 2; Resp'ts' July 21, 2026 Letter at 3–4). Respondents contend that "Petitioner [wa]s not . . . in federal custody" because he was "released to the safekeeping, custody, and care of the [NCSD]/[NCCC]" pursuant to the writ ad prosequendum and "remain[ed] in the custody of the NCSD." (Resp'ts' July 17, 2026 Letter at 2; *see also* Resp'ts' July 22, 2026 Letter). As such, Respondents contend that they were not E.T.G.'s "immediate custodian" at the time of filing, and therefore the Petition should be dismissed. (Resp'ts' July 21, 2026 Letter at 3–4).

Aside from citing the general rule that "the 'proper respondent to [a] habeas petition' is the *immediate custodian* at the time of filing," (*id.* at 3 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004))), Respondents offer no authority for their assertion that the writ ad prosequendum places E.T.G. outside of federal custody. And there is significant authority to the contrary.

"A writ ad prosequendum orders the production of a prisoner in court for the purpose of standing trial." *Lugo v. Hudson*, 785 F.3d 852, 854 (2d Cir. 2015) (citing 28

3

U.S.C. § 2241(c)(5)).  "Using this writ, a sovereign may take temporary custody of a

prisoner in the custody of another sovereign, for the purpose of prosecution, *without*

*acquiring primary custody*."  *Pope v. Perdue*, 889 F.3d 410, 412–13 (7th Cir. 2018) (emphasis

added); c*f. Lugo*, 785 F.3d at 854–55 ("If a prisoner is serving a state sentence when he is

produced for a federal prosecution, the writ temporarily transfers him to federal

custody for prosecution but the state retains primary custody for the purpose of

calculating his state sentence.").

"[T]he sovereignty which first arrests the individual acquires the right to prior

and exclusive jurisdiction over him[.]"  *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1978); *see*

*also United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("As between the state and

federal sovereigns, primary jurisdiction over a person is generally determined by which

one first obtains custody of, or arrests, the person.").  "Because the receiving sovereign

merely obtains limited jurisdiction over the 'borrowed' prisoner, the prisoner is still

under the jurisdiction of the sending sovereign, and is considered to be in the custody

of the sending sovereign not the receiving sovereign."  *Jake v. Herschberger*, 173 F.3d

1059, 1061 n.1 (7th Cir. 1999).  Thus, "a prisoner detained pursuant to a writ of habeas

corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless

and until the first sovereign relinquishes jurisdiction over the prisoner."  *Pickett v.*

*Warden McKean FCI*, 726 F. App'x 104, 106 (3d Cir. 2018) (quotation omitted); *see also*

*Holloman v. Warden Fairton FCI*, 635 F. App'x 12, 14 (3d Cir. 2015) ("The production of a

defendant pursuant to a writ of habeas corpus *ad prosequendum* does not affect the

jurisdiction of the sovereign with primary custody over a defendant.").  "A prisoner is

'relinquished' by the state when he or she is released on bail, the state charges are dismissed, the prisoner is released to parole, or the state sentence expires." *Lugo v. Hudson*, No. 13-CV-0753, 2014 WL 11350815, at *4 (N.D.N.Y. June 16, 2014) (quotation omitted), *aff'd*, 785 F.3d 852 (2d Cir. 2015). Importantly, transfer to another jurisdiction "pursuant to a writ of habeas corpus ad prosequendum does not amount to a relinquishment of primary jurisdiction." *Rosemond v. Menifee*, 137 F. Supp. 2d 270, 273 (S.D.N.Y. 2000) (citing *In re Liberatore*, 574 F.2d at 89).

Respondents arrested Petitioner on April 28, 2026 and took him into custody — not Nassau County.[1] Nothing suggests that Respondents relinquished custody of E.T.G. Indeed, the writ ad prosequendum expressly required his return to ICE. (Writ of Habeas Corpus ad Prosequendum at 3–4). ICE therefore remained E.T.G.'s primary custodian and E.T.G. remained in ICE custody. *See Jake*, 173 F.3d at 1061 n.1; *Vidal-Martinez v. Prim*, No. 20-CV-5099, 2020 WL 6441341, at *5 (N.D. Ill. Nov. 3, 2020) ("[T]he writ states that 'Vidal Martinez shall remain in the custody of the Decatur County Detention Center, Greensburg, [Indiana] until the completion of this criminal matter, then released to his ICE detainer at that time.' This demonstrates that Vidal-Martinez is

---

[1] Although the Rousseau Declaration asserts that E.T.G. was arrested by the Nassau County Police Department on March 19, 2026, (Rousseau Decl. ¶ 10), he was released from state custody pending the resolution of these charges, as he was working when ICE arrested him on April 28, 2026, (Pet. ¶ 11; *see also* Vandoros Decl. ¶ 8). To the extent E.T.G. was detained pursuant to his Nassau County arrest, Nassau County relinquished jurisdiction over E.T.G. by releasing him. *See, e.g.*, *Glover v. Warden, Fed. Bureau of Prisons*, No. 25-CV-2470, 2025 WL 1397140, at *3 (S.D.N.Y. May 14, 2025) ("[W]hen an arrestee is released on bail or posts bond and is subsequently taken into the physical custody of a separate sovereign, the second sovereign acquires primary jurisdiction."). Therefore, ICE acquired primary jurisdiction when it arrested E.T.G. on April 28, 2026.

only in Indiana for purposes of prosecution *and is still in ICE custody, confirming that Vidal-Martinez named the appropriate custodian.*" (emphasis added) (citation omitted)).

Respondents' position is particularly nonsensical because the only basis for E.T.G.'s continued detention by NCSD was the writ ad prosequendum's requirement that he be returned to ICE upon conclusion of his criminal proceedings, which were terminated on July 16, 2026—with a sentence involving no jail time. (*See* Writ of Habeas Corpus ad Prosequendum at 3–4 ("The Nassau County Sheriff's Office and/or the Nassau County Correctional Facility is **FURTHER DIRECTED** to return the Defendant, [E.T.G.], to the safekeeping, custody and care of agents of the U.S. Department of Homeland Security, Immigration and Customs Enforcement at the **Orange County Correctional Facility at 110 Wells Farm Road, Goshen, New York 10924** upon the conclusion of the criminal proceedings in the Nassau County Court[.]"); Rousseau Decl. ¶ 16).

For the reasons set forth above, Respondents have not established that they lack "the ability" or "the power" "to produce the prisoner's body before the habeas court."

*Padilla*, 542 U.S. at 435. Accordingly, E.T.G. named his immediate custodian at the time of filing, and the Court has jurisdiction to adjudicate his petition.[2]

As to the merits, Respondents contend E.T.G. was properly detained under § 1226(c)(1)(E) because at the time of his arrest, his grand larceny charges were still pending. (Resp'ts' July 21, 2026 Letter at 4–5). But Respondents ignore the fundamental defects in E.T.G.'s arrest. ICE arrested E.T.G. pursuant to an I-200 warrant it issued on October 21, 2024. (Vandoros Decl. ¶ 6). 8 C.F.R. § 1236.1 limits the time in which such a warrant may be executed: "*[a]t the time of the issuance of the notice to appear [NTA], or at any time thereafter* and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 1236.1(b) (emphasis added). "The NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate [an] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021)). The NTA is the

---

[2] For these same reasons, transfer to the Southern District is not warranted. (*See* Resp'ts' July 22, 2026 Letter (requesting the Court transfer the petition to S.D.N.Y. because "Petitioner has not been in ICE custody within the Eastern District of New York since his initial transfer to the [Orange County Jail], in the S.D.N.Y., on April 30, 2026")). E.T.G. was detained at NCCC at the time he filed his habeas petition, and as explained above, Respondents remained his immediate custodian at that time. His subsequent return to the Southern District does not require transfer. *See Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025) (finding that petitioner's "subsequent transfer to Louisiana" after the petition was filed did not "strip the District of Vermont of habeas jurisdiction" because "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release" (quoting *Padilla*, 542 U.S. at 441)).

immigration version of a "charging instrument," and the I-200 is the warrant that follows. Put differently, "[i]f ICE wants to use a warrant, it must have a *valid* NTA in place." *Parada Cruz v. Mullin*, -- F. Supp. 3d --, No. 26-CV-1110, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) (emphasis added).

Here, ICE relies upon the October 21, 2024 arrest warrant to justify E.T.G.'s arrest, contending that it issued an NTA that same day. (Rousseau Decl. ¶ 9; I-200, attached to Rousseau Decl. as Ex. B, Dkt. No. 6-3). That NTA, however, is invalid because it does not include a place, date, or time to appear. (Oct. 21, 2024 NTA, attached to Rousseau Decl. as Ex. C, Dkt. No. 6-4). The Supreme Court held in *Pereira* that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)," finding that "[f]ailing to specify integral information like the time and place of removal proceedings unquestionably would deprive the notice to appear of its essential character." *Pereira v. Sessions*, 585 U.S. 198, 202, 214 (2018) (cleaned up); *see also Niz-Chavez*, 593 U.S. at 170–71; *Campos-Chaves v. Garland*, 602 U.S. 447, 461 (2024) ("Each alien's NTA provided only that the time of the hearing was 'TBD' or 'to be set,' which is the sort of language we found to be inadequate in *Pereira*.").

This defect renders the October 21, 2024 arrest warrant, which Respondents rely upon as the basis for E.T.G.'s arrest, invalid. *See, e.g., Parada Cruz,* 2026 WL 1027441, at *2 (finding petitioner's "essentially blank" NTA with "no date or time to appear" invalid and explaining that ICE could not arrest petitioner "pursuant to an I-200

warrant" without "open removal proceedings reflected in a valid NTA").[3]  ICE did not

issue a valid NTA for E.T.G. until April 28, 2026, *after* he was arrested.  (Resp'ts' July 21,

2026 Letter at 2; Rousseau Decl. ¶ 12; April 28, 2026 NTA, attached to Rousseau Decl. as

Ex. D, Dkt. No. 6-5).  That post-arrest NTA cannot retroactively validate E.T.G.'s illegal

arrest.  *See Gopie*, 2025 WL 3167130, at *3 ("ICE does not have free-ranging ability to

arrest and detain people, and figure out the reasons later[.]"); *Parada Cruz,* 2026 WL

1027441, at *5 ("Police and law enforcement cannot operate as roving bands, detaining

individuals, figuring out the reasons later, and papering over their failures

afterwards.").  Because there was no valid NTA in place at the time of E.T.G.'s arrest,

E.T.G.'s arrest was illegal.  *See Gopie*, 2025 WL 3167130, at *1 (holding that ICE lacked

the authority to effectuate an arrest pursuant to an I-200 where there was no NTA in

place at the time of petitioner's arrest); *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL

1353806, at *2 (E.D.N.Y. May 14, 2026) (same), *appeal docketed*, No. 26-1898 (2d Cir. July

14, 2026).

Moreover, as in *Yeleshev*, ICE's failure to issue a valid NTA before arresting

E.T.G. is unjustified.  ICE knew of E.T.G. in October 2024, (*see* Rousseau Decl. ¶ 8), long

before his April 28, 2026 arrest.  Respondents provide no justification as to why they did

not issue a valid NTA and place E.T.G. into removal proceedings in the two-year period

preceding his arrest.  Even more troubling, Rousseau's Declaration suggests that he

---

[3] Moreover, contrary to Vandoros's assertion that E.T.G. was served with the arrest warrant on the day of his arrest, (Vandoros Decl. ¶ 10), the "Certificate of Service" portion of the arrest warrant submitted by Respondents, months after E.T.G.'s arrest, is blank, (*see* I-200).  And E.T.G. maintains he was never served with the arrest warrant at all.  (*See* Decl. of E.T.G., attached to Pet. as Ex. A, Dkt. No. 1-1 ¶¶ 14–17).

believes removal proceedings are not supposed to be initiated until after an arrest—stating that "removal proceedings were not initiated in 2024" "[b]ecause Petitioner was not ultimately arrested at that time." (Rousseau Decl. ¶ 9). Once again, Respondents have proffered testimony from an ICE officer reflecting a gross misapprehension of ICE's arrest authority. *See, e.g.*, *Yeleshev*, 2026 WL 1353806, at *6; *Alfaro v. Mullin*, -- F. Supp. 3d. -- No. 26-0766, 2026 WL 734348, at *3 (E.D.N.Y. Mar. 16, 2026).

Respondents' arguments here unfortunately add to the litany of legally baseless arguments Respondents have made before this Court. Notably, the letter filed on July 22, 2026, once again seeking dismissal, or alternatively, transfer to the Southern District, ostensibly on the basis that E.T.G.'s transfers were conducted by NCSD, (*see* Resp'ts' July 22, 2026 Letter), contains not a single citation to any case, statute, or legal authority on the relevant issue. The only legal citation in the entire letter is a citation to 28 U.S.C. § 112(b), to support the assertion that Orange County is located in the Southern District.

Because E.T.G.'s arrest was illegal, the writ is provisionally granted. Respondents are directed to effectuate E.T.G.'s release by **July 25, 2026 at 10:00 P.M.** and file a letter on the docket confirming his release by that time. Respondents are enjoined from detaining E.T.G. absent further direction from this Court. Respondents may not use ICE ankle monitors or similar technology to monitor E.T.G., because in this Order the Court provisionally grants the writ.

In addition, to preserve E.T.G.'s ability to proceed under pseudonym while his motion to do so remains pending, Petitioner's counsel is directed to refile the papers submitted in support of the Petition by **July 31, 2026**, as E.T.G.'s name was not properly

redacted from all the papers, (*e.g.*, Decl. of E.T.G., attached to Pet. as Ex. A, Dkt. No. 1-1).  Once Petitioner refiles these papers with the proper redactions, the Court will un-restrict the case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   July 25, 2026
        Central Islip, New York

11